UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO MORELL MITCHELL,

       Plaintiff,                            CIVIL ACTION NO. 11-11438

       v.                                   DISTRICT JUDGE PATRICK J. DUGGAN

COMMISSIONER OF                    MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On April 5, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's decision to deny benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), the matter was referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income benefits (Dkt. No. 3). The matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 11, 18).

    *B.    Administrative Proceedings*

Plaintiff applied for benefits on September 25, 2006, alleging that he became unable to work on April 8, 2006 (Tr. 11, 95-103). The claim was initially disapproved by the Commissioner on May 23, 2007 (Tr. 11, 59-66). Plaintiff requested a hearing and on September 9, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Jerome B.

Blum, who considered the case *de novo*. In a decision dated November 12, 2009, the ALJ found that Plaintiff was not disabled (Tr. 8-20). Plaintiff requested a review of this decision on January 14, 2010 (Tr. 6-7). On February 4, 2011, the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-13E, Tr. 265-273), the Appeals Council denied Plaintiff's request for further review (Tr. 1-5).

For the reasons set forth below, this Magistrate Judge finds that the ALJ's decision contains errors of law. Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be **REMANDED** for a new hearing consistent with the discussion below.

## II.   STATEMENT OF FACTS

### A.   *ALJ Findings*

Plaintiff was 36 years old at the time of the administrative hearing (Tr. 16) Plaintiff has past relevant work as a "line leader for a distribution company" (Tr. 16). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since April 8, 2006 (Tr. 13). At step two, the ALJ found that Plaintiff had the following "severe" impairments: cervical and lumbosacral disc protrusions with radiculopathy and a cognitive disorder secondary to a closed head injury. *Id*. At step three,

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 15).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "simple, unskilled sedentary exertional work with a sit/stand option and no lifting over 5 pounds " (Tr. 15).  At step four, the ALJ found that Plaintiff could not perform his previous work as a line leader for a distribution company (Tr. 16).  At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, with approximately 4,500 unskilled sedentary assembly, inspection and packaging jobs in the "metropolitan area" (Tr. 16).

### B.     *Administrative Record*

As discussed in greater detail below, the only matter at issue in this case concerns Plaintiff's mental functioning.  As such, the summary of the administrative record will focus on the evidence concerning Plaintiff's mental abilities.

At age 8, Plaintiff was diagnosed as "learning disabled" in a November 16, 1981 Psychological Services Case Study from the Detroit Public Schools. The report indicated Plaintiff had a verbal IQ of 81, a performance IQ of 73 and a full scale IQ of 76 (Tr. 168-173). The Educational Diagnostic section of this DPS case study indicated a WRAT[2] score of 58.

On April 8, 2006 (when he was 33 years old), Plaintiff was injured when he fell backwards off a porch from a height of about 12 feet (Tr. 174).  As a result of this fall, Plaintiff injured his back and neck, and also received a closed head injury (Tr. 175).  Plaintiff has not worked since this fall.

---

[2] The Wide Range Achievement Test (WRAT) is a brief achievement test measuring reading recognition, spelling, and arithmetic computation.  *See* http://cps.nova.edu/~cpphelp/WRAT.html (last visited May 24, 2012).

On April 11, 2007, Plaintiff underwent IQ testing with psychologist Nick Boneff, Ph.D. (Tr. 237-239). Dr. Boneff administered a standard intelligence test, the WAIS-III, and found Plaintiff's intellectual functioning fell in the "mildly retarded" range (Tr. 238). Specifically, Dr. Boneff assigned Plaintiff the following IQ scores – verbal IQ of 61, performance IQ of 63 and full scale IQ of 58. *Id.* Dr. Boneff's ultimate diagnosis was cognitive disorder not otherwise specified (NOS), "probably preexisting the head injury, but also exacerbated by the head injury..." (Tr. 239). Dr. Boneff concluded that Plaintiff's prognosis was "guarded," due to his limited cognitive abilities. *Id.*

Dr. Boneff re-evaluated Plaintiff in October 2009, and conducted another intelligence test. At this time, Dr. Boneff reported that Plaintiff scored a verbal IQ of 67, a performance IQ of 63 and a full scale IQ of 63 (Tr. 334). Dr. Boneff diagnosed a cognitive disorder, secondary to closed head injury (Tr. 335). Dr. Boneff concluded that Plaintiff's prognosis still remained "guarded," in light of Plaintiff's cognitive difficulties (Tr. 335).

### C. *Plaintiff's Claims of Error*

Plaintiff's sole argument on appeal is that he met or medically equaled Listing 12.05, which covers mental retardation. More specifically, Plaintiff argues that the ALJ did not conduct a rigorous enough analysis at step three in order to determine whether Plaintiff met or medically equaled Listing 12.05.

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*,

493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony,

and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of*

*Soc. Sec.*, 167 Fed. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

      B.     *Governing Law*

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C.   *Analysis and Conclusions*

This Magistrate Judge finds that the ALJ erred by not setting forth any reasoning as to why Plaintiff failed to "meet" or "medically equal" a listed impairment at Step Three. Indeed, the ALJ's opinion simply states at Step Three, in entirely conclusory fashion, that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments..." (Tr. 15).

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets *or equals* one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.,* 381 Fed. App'x. 488, 491 (6th Cir.2 010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 414 (6th Cir. 2011).

Plaintiff argues that he meets or medically equals Listing 12.05, for mental retardation. The diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 states: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates onset of impairment before age 22." Thus, in order to demonstrate that he meets or medically equals Listing 12.05, Plaintiff must show: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations.

Beyond these three factors, Plaintiff also must satisfy "any one of the four sets of criteria" in Listing 12.05. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see also Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("[A] claimant will meet the listing for mental retardation only if the [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria[.]") (internal quotations marks omitted). The four sets of criteria in Listing 12.05 provide:

> (A) Mental incapacity evidenced by dependence upon others for personal needs (*e.g.* toileting, eating, dressing or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> (B) A valid verbal, performance, or full scale IQ of 59 or less; or
>
> (C) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
>
> (D) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment resulting in at least two of the following:
>
> (1) Marked restriction of activities of daily living; or
>
> (2) Marked difficulties in maintaining social functioning;
>
> (3) Marked difficulties in maintaining concentration, persistence, or pace; or
>
> (4) Repeated episodes of decomposition, each of extended duration.
>
> 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.05(C).

The only issue in this matter is whether Plaintiff can demonstrate subaverage intellectual functioning with deficits in adaptive function *prior to age 22*. Without question, Plaintiff satisfies both the B & C criteria set forth above.[3]

---

[3] On April 11, 2007, Dr. Boneff diagnosed Plaintiff with a full scale IQ of 58 (Tr. 238), which would satisfy criteria B, above. Moreover, the Commissioner conceded in its motion for summary judgment (Dkt. 18 at 2) that Plaintiff's back condition is sufficient to satisfy the "physical...impairment imposing an additional and significant work-related limitation of function" portion of criteria C which, when coupled with Plaintiff's IQ scores in the 60-70 range, would satisfy criteria C.

There is some evidence in the record indicating that Plaintiff's mental retardation did, in fact, onset prior to age 22. Most notably, the Detroit Public Schools assessment that diagnosed Plaintiff (at age 8) as learning disabled and assigned him to special education classes. Certainly, this assessment might demonstrate the subaverage intellectual functioning with deficits in adaptive function prior to age 22. Defendant argues that Plaintiff cannot show that his mental retardation occurred prior to age 22, but that Plaintiff's mental limitations instead manifested after Plaintiff suffered his fall and resulting closed head injury at age 33. Defendant likens this case to *Turner v. Comm'r of Soc. Sec.*, 381 Fed. App'x 488, 492 (6th Cir. 2010), which held that the plaintiff, who suffered a head injury at age 22, did not satisfy Listing 12.05 since the plaintiff could not show subaverage intellectual functioning with deficits in adaptive function prior to age 22. However, this case is readily distinguishable from *Turner*. First, the plaintiff in *Turner* was not enrolled in any special education classes in school, unlike Plaintiff in this case. Second, and more importantly, Dr. Boneff found that Plaintiff had a full scale IQ of 58 and explicitly diagnosed Plaintiff with cognitive disorder not otherwise specified (NOS), "***probably preexisting the head injury***, but also exacerbated by the head injury..." (Tr. 239) (emphasis added). Thus, the state psychologist himself recognized that Plaintiff was mentally challenged before suffering his closed head injury.

In any event, this Court cannot say with any confidence that the same outcome would have resulted had the ALJ performed a more rigorous "meets" or "medically equals" analysis at Step Three. When faced with similarly conclusory Step 3 analysis, courts have found that an ALJ's lack of narrative deprives the federal court of its ability to act as an appellate tribunal and instead forces the court to become the finder of fact:

> In this case, the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even

> identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment. . . . Such a bare conclusion is beyond meaningful judicial review. Under the Social Security Act,
>
>> [t]he Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.
>
> 42 U.S.C. 405(b)(1). Under this statute, the ALJ was required to discuss the evidence and explain why he found that appellant was not disabled at step three.
>
> This statutory requirement fits hand in glove with our standard of review. By congressional design, as well as by administrative due process standards, this court should not properly engage in the task of weighing evidence in cases before the Social Security Administration. Rather, we review the Secretary's decision only to determine whether [his] factual findings are supported by substantial evidence and whether [he] applied the correct legal standards.

*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *see also Miller v. Comm'r of Soc. Sec.*, 181 F. Supp. 2d 816, 820 (S.D. Ohio 2001) (citing *Clifton* with approval and explaining, "[t]he Commissioner argues that the error in this case, if any, was made by plaintiff, who failed to satisfy his Step 3 burden of coming forward with evidence to prove that he was disabled under the Listings. . . . [W]hether or not plaintiff came forward with the requisite evidence at Step 3, the ALJ was required to discuss that evidence, relative to the Listings, as required by *Clifton*. As noted above, the ALJ failed to do so, thus meriting a sentence four remand."); *Torres v. Comm'r of Soc. Sec.*, 279 Fed. App'x 149, 151-52 (3d Cir. 2008) ("This court has stated that it is the

ALJ's responsibility to identify the relevant listed impairment(s) and develop the arguments both for and against granting benefits" (internal quotation marks, alterations, and citation omitted)); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("As we have recently noted, failure to discuss or even cite a listing, combined with an otherwise perfunctory analysis, may require a remand."); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) ("Because we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning supporting a determination that Burnett's 'severe' impairment does not meet or is not equivalent to a listed impairment."); *Sorenson v. Astrue*, No. 10-C-0582, 2011 WL 1043362, at *9-11, (E.D. Wis. Mar. 18, 2011) (finding that ALJ's explanation that state DDS physicians reached a conclusion that the plaintiff did not "medically meet or equal a listed impairment" was "perfunctory" articulation where ALJ failed to identify any specific Listing used for comparison); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 416 (6th Cir. 2011) (remanding where ALJ performed step three analysis for mental impairment, citing *Clifton* and *Burnett* with approval, and noting, "In short, the ALJ needed to actually evaluate the evidence, compare it to...the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence").

In sum, the ALJ erred at Step Three by not discussing whether Plaintiff met or medically equaled a listed impairment, in particular Listing 12.05. Therefore, a remand is required so that the ALJ can undertake a more thorough Step Three analysis.

### III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED** and that, pursuant to sentence four of 42 U.S.C. § 405(g), this matter be **REMANDED** for a new hearing consistent with the discussion above.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                      s/Mark A. Randon
                                      Mark A. Randon
                                      United States Magistrate Judge

Dated: May 29, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, May 29, 2012, by electronic and/or ordinary mail.*

*s/Melody Miles*
*Case Manager Magistrate Judge Mark A. Randon*
*(313) 234-5542*